## CANNON *v.* CENTRAL OF GEORGIA RAILWAY CO.

Inasmuch as the evidence for the plaintiff would have supported a finding of negligence against the defendant and did not necessarily require a finding that the plaintiff's husband could by the exercise of ordinary diligence have avoided the consequences to himself of such negligence, the case should have been submitted to the jury and not disposed of by the granting of a nonsuit. The lines upon which the case should be tried are indicated in the opinion herewith filed.

Argued February 15, — Decided March 1, 1900.

Action for damages. Before Judge Norwood. City court of Savannah. May term, 1899.

*Gignilliat & Stubbs* and *R. R. Richards,* for plaintiff
*Lawton & Cunningham,* for defendant.

COBB, J. Mrs. Cannon sued the Central of Georgia Railway Company. for the homicide of her husband, who was a switchman in the employ of the Florida Central and Peninsular Railroad Company. At the trial the judge granted a nonsuit, and this is the error assigned. Whenever necessary to mention the two companies, they will be referred to respectively as the Central Company and the Florida Company, in order to avoid the necessity of repeating the full names of the two companies. Taking the case in its most favorable light for the plaintiff,

which is the rule to be applied in cases of nonsuit, the evidence
authorized a finding of the following facts: The Florida Com-
pany had leased from the Central Company a spur-track con-
necting with the main line of the latter company and by use of
this spur-track the Florida Company went upon such main line
and thus reached the city of Savannah. Cannon, the deceased,
was a switchman in the employ of the Florida Company, whose
duty it was to attend to the switch at the point where the spur-
track connected with the main line. He was killed in the early
morning before daylight, by an engine of the Central Company
which passed in front of the switchman's house, running back-
wards at the rate of 15 miles an hour. Cannon was upon the
track at the time he was killed. This engine came along the
main line of the Central Company's track. It was the duty of
the deceased, when signals of a certain character were made by
the engineers using the track which ran by the switch, to come
out and be in a position to make whatever changes in the switch
would be necessary. It was not absolutely necessary that he
should go upon the track in order to change the switch, but the
evidence tended to establish that that was the most convenient
and usual method of reaching the switch when going from the
house to where the switch was located. There was a sign near
the switchman's house, stating that engines approaching from
the direction in which this engine was coming should reduce
speed to four miles an hour. There was evidence from which
it could be inferred that the engineer in charge of the engine
had given that character of signal which required Cannon to
come out to do whatever was necessary to be done upon the ap-
proach of the train, and there was also evidence that when this
character of signal was given it was the duty of the engineer
giving the signal to have his engine under control and not to
proceed past the switchman's house until a responsive signal
was given by the switchman.

We do not think that this case should have been disposed of
by a nonsuit. We have not undertaken to give the entire testi-
mony. There is much evidence which would authorize a jury
to find in favor of the defendant, but we think that there is also
some evidence which would warrant a finding in favor of the

plaintiff. The case should be submitted to a jury, and under proper instructions they should be allowed to decide from the evidence these questions: (1) Was the signal given by the engineer of such a character that the deceased could have been misled into believing that it was given for him to come out of the house and be ready for the discharge of such duty as might be incumbent upon him as switchman when the engine should approach the switch?. (2) Was it the duty of the engineer, if such signal had been given, to have had his train under control so that he would not run by the switch until he had received an answering signal from the switchman? (3) Was the rate of speed at which the engine was approaching the switch such that it would be manifest to one in the position of the switchman that the engineer had no intention of reducing speed or stopping for the answering signal? It appeared from the evidence that, when there was no signal to the switchman to come out upon the track, the trains of the Central Company were accustomed to go upon this track at any rate of speed the engineers saw proper to employ, and that the switchman was necessarily cognizant of this fact. This being true, if there was no misleading signal and nothing in the line of his duty calling him upon the track, his presence there would have been at his own peril, and the plaintiff would not be entitled to recover, unless it should appear that the engineer failed to exercise due diligence to avoid injuring him after he was discovered in a situation of danger. If, on the other hand, the signal given was of such character that the deceased had the right to regard it as one to himself requiring him to come out upon the track, and if while attempting to respond to this signal and discharge the duty incumbent upon him he was run over and killed by the engine running at a rapid rate of speed, then the plaintiff would be entitled to recover, provided it was not apparent to the deceased that the speed at which the engine was approaching the switch was such as to show that the engineer did not intend to stop the train or to get it under control, but would pass the switch at a high rate of speed. In the latter event it would be for the jury to say whether under all the circumstances the deceased had exercised ordinary care in observing the speed of the

approaching engine, and whether he had taken proper precautions for his own safety, in the light of the fact that the engineer did not intend to wait for the answering signal from him.

*Judgment reversed.    All the Justices concurring.*